United States v. Joseph Belmar, 24-2041 Just give it a minute for the hubbub to settle. They don't know what they're going to miss. They should all hang out here. Thank you. May it please the court, your honors, my name is Sarah Kunstler and I represent the United States Department of Justice. I'm here to talk about the two reports  The first one is the imposition of obstruction of an obstruction enhancement under 3C1.1 and the denial of acceptance responsibility reduction under 3E1.1. Both of these were deliberate, willful attempts to deceive the court. But what I submit to you is that those letters, when read in context, and especially alongside Mr. Belmar's statements in the formerly sealed April 3rd, 2024 representation hearing that the government attached to their papers, that that interpretation is not plausible and that the court's guidelines analysis was incorrect. I ask a question, sort of big picture. Does Mr. Belmar seek to vacate his conviction and withdraw his guilty plea? Mr. Belmar seeks to be resentenced and have the, based on the error in how the court applied 3E1.1 and 3C1.1, not to have his conviction overturned. And in fact, even at that April, did you have another question, your honor? I'll just tell you what I'm struggling with. The scenario that you've presented, and I understand why you've presented it this way, is yeah, he admitted to the possession, but not to the shooting. And I have two concerns about that. I'm just sort of that I'm struggling with. And one is that when I look at his actual letters, they don't say that. They deny all of the above, right? And so they don't say, yes, I possessed the gun, but no, I didn't shoot. He says, I'm being accused of a crime I didn't commit. He seeks dismissal of the indictment. And he says, I was persuaded into admitting that the gun was mine. So as a matter of just sort of fact, it seems to me that he's lumping the possession and the shooting together. And then when you look at the actual evidence, it's pretty hard to figure out on this record, you can easily imagine records where somebody says, yeah, I had that gun, but it wasn't the one used in the shooting yesterday. But here, the gun was, if he's the one who dropped the gun while running from the officer, it's hard to understand why he's not also the one who shot it moments before. Yeah, well, I have a few things to say about this, your honor. I mean, the first is that the context that I'm referring to is that Mr. Belmar is a person who's on five different medications, very strong medications, an anti-psychotic medication, anti-anxiety medication, medications for tremors you get when psychotic medication makes you shake, right? So he's a person who goes to a FATICO hearing and is obviously disturbed by what happens there because his first letter comes, I want a new lawyer, immediately five days after that hearing. It takes the court, the district court, four and a half months to actually schedule a representation hearing for this man, during which time he's repeatedly sending letters. You know, the government's immediate response is to say he should not get acceptance points. The court orders or the court puts on the docket that it's going to hold a hearing to address his first letter. I think the court puts that on the docket in December, on December 7th, saying we're going to hold a hearing on this on January 17th. Then when they finally get to court on January 17th, the issue never comes up. It's incredible. This court appearance was called for this purpose by this order in the docket. And at that conference, what the parties are addressing is they're making arguments about oral argument over the FATICO hearing. And the only context at that hearing in which my client's letters comes up is the government reiterates that it wants acceptance points denied and says now we also want obstruction points, but we might change our opinion if Mr. Velmar withdraws his letter, right, if he retracts these things. He's not given new counsel, even though he's asked for it, you know. He writes another letter asking for new counsel again in another letter. And what is happening is we have a mentally ill person whose issues are being ignored. Then finally he gets to a representation hearing on April 3rd or April 4th, and the government says there's no time for this. This is a waste of time. After the court has for four and a half months delayed this hearing or not had this hearing at all, they don't have time for Mr. Velmar. The advisory counsel says I can't possibly take this case without several weeks to review the documents and help Mr. Velmar understand whether or not he should withdraw them. It's going to take time. He's in Hudson County. I can't do it immediately. And by the way, Your Honors, I would say I've been counsel-appointed in those situations, and it takes time. Even if there isn't a substantive record as there was here, it takes time to get trust with the ---- And I understand that. And one of the things I struggled with is from being a trial judge, defendants say all sorts of things. Now, admittedly, two of his letters says, I say these things under penalty of perjury. Now, he didn't have advice of counsel that's problematic, right? So there's something ---- I get your point. There's something that seems sort of inherently unfair to when a defendant, sometimes against advice of counsel, mouths off certain things, and they're not testifying at a trial for the obstruction of justice enhancement, which I understand is a de novo for us, right, review. But I didn't hear an answer to Judge Robinson's question, which is there's sort of a line between perjury, right, and a line of, hey, I just want to paint the facts in a way that's more, you know, makes me a little bit more sympathetic. Given the factual scenario here, which is what I struggled with, that there was an officer who actually saw him shoot the gun and then chases him and he drops the gun, if, in fact, his letters under oath are interpreted to say, not me, wasn't me, not my gun, wasn't there, how is that then not perjury? Can you help me sort of understand how all these other things about, you know, he's on medication, he's unrepresented, not make this perjury? Okay. I'll say it's not perjury for two reasons, you know. One, these are inartful statements by a mentally ill person who didn't have the advice of counsel to even extract from him what he truly meant. Well, they're artful. He's well, you know, they're well written. But finally, when he's asked what he meant, right, by the judge for the first time in April, what he says is, my main issue, he explains what his issues were. Whatever he might have written, he says, this is what it was about. He says, I was upset. I want new counsel. I was upset because my counsel failed to object to Mendon's testimony. And my biggest issue is that I was expecting the guidelines for the gun charge, not an attempted murder guideline. So here, when he's in front of the judge, he's not denying response. This is the first opportunity to speak. Maybe, yeah. The court didn't apply that guideline. No, but. He got a huge break in that sentence. Yes, but what he's saying is that his issues, he's continuing to accept responsibility for possessing the firearm when he's actually had an opportunity to have a conversation with somebody. Show me where in the letters under oath he's accepting responsibility for possession of the firearm. At that hearing. At that hearing on April. So you're not talking about the letters. No. My question is the letters, right? Someone can commit perjury, and that perjury doesn't go away because they say something else later. Well, I think there's, when he says, I'm innocent, I'm innocent, nobody is actually interrogating him to say, what do you mean you're innocent of, right? I think just saying, I'm innocent, I'm innocent, doesn't necessarily mean he's saying he's innocent of the gun charge. He's saying, I didn't want to plead guilty to the gun charge, and I'm innocent. But I think it required a refined conversation. And the first conversation he's getting on this, you know, is on the record here where he's accepting responsibility for the firearm. He's telling the Court, my frustration is from my belief that my lawyer mishandled an issue, right, and that what I wanted to challenge was the guideline exposure, not my plea. That's what he's telling the Court in that moment. And what I also, my other piece of the answer to this is to why this shouldn't be held against him as obstruction, maybe why it's not perjury, is to look at Application Note 2, right? And, you know, that denials of guilt must be under oath and must constitute perjury, right? And I don't Well, they were under oath, right? Yeah. At least two of the letters. Well, you know, they're uncounseled pro se letters. All of the, you know, when the guidelines say under oath, what I think they're But the other piece here, right, all of the samples, the examples that the government gave were examples were counseled, right? And the other people Counseled or testified. Well, they were either testified or they were, they were affidavits that were submitted, you know, by counsel, not by defendant. But the other piece here, two other Well, some of them, some of them were not, right? Some of them is somebody creating a false document and sending it in. But that was not the defendant creating it. It was somebody else who stated something falsely, not the defendant. But the other piece of this here is But the defendant submitted it at their request, right? Is what these are. If you look at U.S. v. McKay here, is that these are denials of guilt, right? These are the types of things, there's a denial of guilt exception, right? These, and like U.S. v. McKay, which is, I didn't cite, but which is 183 F. 3rd 89, is the only case I could find about what kind of denial of guilt falls under the denial of guilt exception. And what the Court says there is, this is about simple denials of guilt. This is when a defendant says, I didn't do it. A defendant is allowed to say, I didn't do it. And we don't count that as obstruction. And that's really all Mr. Bumler is doing. He wasn't saying, you know, McKay is about a case where I think the, you know, if someone were to say John, they say in McKay, if someone were to say John Smith did it, not me, right? But here he's really just saying, I didn't do it. This wasn't me. I didn't do it. I didn't do it. I'm just saying that the I'm innocent claim, right, that he's being, that he's getting these two points for, I'm innocent, I'm innocent of the crime, right? Assuming that even had to do with the gun charge, which I don't think we can tell without a lawyer actually saying what did you mean you were innocent of, right, that it's falling neatly within the exception of application 2 as, as, you know, as this Court decided in U.S. v. McKay. And the other piece of it here is the other limitation that note 2 applies is about mistake confusion, you know, and that really required further interrogation with somebody with this mental illness background. I appreciate that. We're going to get to hear from you again. So let's, let's turn to the Attorney Lichtenberg.   Thank you, Your Honor. You're not the first. You won't be the last. I'm sorry. May it please the Court. I'm Jim Lichtenberg. I'm an Assistant United States Attorney in the Southern District of New York. I represent the United States in this appeal as I did below. Judge Wood did not clearly err in imposing a two-level enhancement for obstruction of justice or in denying acceptance of responsibility. Can you pick up, and I'm sorry to jump in. Yeah. Go right ahead. And pick up where that last exchange left off. I'm especially concerned there are sort of statements about what he said, and then when you get into the letters themselves, it's not as clear to me that he said them. And so understanding that the obstruction enhancement's not available for assertions of your constitutional rights, and while it may apply to sort of detailed, factual statements under oath that are false and not informed by mistake, it doesn't apply to sort of a general denial of guilt. I think that's the Agudelo case. Can you find, point me to the strongest thing he said that you rely on for the argument that he committed perjury as understood in this guideline in these letters? I'll answer that, and let me make two quick points before that. Okay. First of all, the interpretation of these letters and his intent in these letters, that is a factual question. So that is not subject to de novo review. That is a factual determination that Judge Wood made based on the combination of these letters and her three-and-a-half years of observing Mr. Belmar firsthand and observing him. And so that is subject to clear error. So even if there is another possible interpretation of these letters, although we think they're pretty clear as to what he's saying. Did he ever say I didn't shoot the gun in these letters? He said that he was falsely identified as the shooter. He spent a lot of time critiquing the basis on which he was identified as the shooter. Show me where he said I was falsely. I believe he said the words false identified. I have them in front of me. Which letter are we looking at? So we can keep looking. I don't know. Give me one moment. Okay, A231, which is the February 5th, 2024 letter. And he says none of these descriptions can't be used to make up a false identification to identify Mr. Belmar as the shooter.  He's saying he doesn't match the description. That's a – that's not – he's saying the – it's sort of almost a legal argument. And put a pin in the fact that people keep calling these letters. One's a motion to dismiss. They're motions. They're not letters. They're legal motions. So he's making a legal argument that these – this identification was insufficient. Well, first of all, this was a factual finding that he made a claim that he wasn't the shooter. And Belmar on appeal has actually conceded this point up until here today. Just show us where – I mean – Brief 28, opening brief 28. We're talking about the concession. I want you to point us to where the lie is. Where the lie, other than a broad sort of a general – And to be clear, there are four different categories of lies here. And any of them are sufficient for the obstruction and to deny the enhancement. Give your best one. So just for instance, A-173. There's a phone. It was clearly his phone. His name and address were all over it. It was pulled off his person when he put in the code. Sorry, which admission is that? What's the date of that submission? A-173 is the one dated December 27, 2023. I don't even know who phoned this belonging to. I don't have any knowledge of these text messages, Google searches, and I don't know any of these people on this phone. That's not written as a legal claim. That's not written as the government has failed to meet its burden. That is a factual claim under penalty of perjury that I don't know anything about this phone. It was false. And under the circumstances, he was making this claim clearly in an attempt to distance himself from the phone, to try to show that he wasn't the shooter, and to try to show that the evidence of his premeditation, that he was trying to Google about removing fingerprints from a gun, that that didn't attach to him. So that is a factual claim. And I understand that. So that's one example. And I wonder if he had submitted this same letter, page A-173, and had not included, signed under 28 U.S.C. 1746, which is pretty articulate, under penalties of perjury, the above and the following to be true, correct, and complete. If that statement had not been there, how does this distinguish this case any different than trial judges receiving letters from people who have fled and are having buyer's remorse, and then send in letters saying they're innocent, they didn't do this, complaining about evidence. I guess that's what I'm struggling with. I mean, I could see if he testified in the FATICO hearing and perjured himself, and the court found that perjury, and then applied the obstruction enhancement. Is it really just that, that he submitted this under penalty of perjury? And what was it to impact? Because the FATICO hearing had already occurred, right? And he received the benefit of not having that adjustment. The court had not yet ruled on the adjustment.  So it was an attempt to get her to rule in his favor. So is that your claim, then, that because this was under oath, that that was designed to impact the judge's ruling on that adjustment? To be clear, in order for the obstruction enhancement to apply, it need not be under oath. That is not a requirement. No, I understand that. He could have submitted some made-up receipt for something. We've had cases like that. But in the context of this case, he did sign it under oath. I guess the typical cases we see is somebody creates a false document that they submit to the court, or gets somebody else to create a false document and submits that to the court and is behind that for the obstruction enhancement, or testifies falsely. That's not the case here. This is a letter that he signs under oath. So I guess I'm asking the government, is it because this letter is submitted under penalty of perjury that makes the difference here? No, Your Honor. A false factual representation that is material to sentencing is sufficient, whether it's signed under oath or not. That's straight out of the commentary to the guideline. All right. If that's the government's position, then why wouldn't courts routinely apply the obstruction enhancement when they receive letters after someone pleads guilty and sentencing and says, you know, since you're sentencing, you know, you're now claiming innocence. I mean, I know that that's done, but it just seems like we typically see it when there's been testimony or something created that matters. The Court has routinely applied it. For instance, in Strange, Hendren, and Bold, all of which are cited in our brief, this Court upheld the enhancement for situations where there was no indication that the lawyer was involved, that the lawyer adopted it. It was a defendant who submitted false statements. And in the case of Hendren, not under oath, and the Court explicitly held it wasn't required to be under oath. And just to correct the record, my understanding from all those cases is that even when the statements purported to be from someone else, it was the defendant who was forging them and submitting them. But if you submit a false statement to the Court, regardless of whether it was under oath, you're making a false factual representation about a live dispute. And there's a difference between that and just saying, I want to withdraw my plea. If you want to withdraw your plea, that could give rise to not getting the enhancement for acceptance. But in terms of obstruction, there's a distinction, and the Court made this distinction clear in Lano, also cited in our brief, between just denying guilt and going further and making factual representations that tell the Court facts. And your position is they matter here because the Court had not ruled on the other enhancement or adjust the guideline application relating to whether this was related to an attempted murder. Yes, there was a live dispute still pending before the Court as to whether the attempted murder guideline should apply. Obviously, highly relevant to that determination was whether he was the one who shot the gun, whether he was the one who had the phone, whether he admitted to shooting the gun in his post-arrest Miranda statement. And he lied about all of those things in this series of letters, and that is sufficient to give rise to this enhancement. And let me just briefly, since it was brought up by counsel, address this point about his mental illness. Again, that's all of the relevant facts regarding his mental illness were before Judge Wood. She knew them well. Again, she had presided over this case for three and a half years. She had reviewed his medical records. She had reviewed the pre-sentence report. I'll note that this argument that he somehow lacked capacity in these letters due to his mental illness was not made below. And so she had before her, including a record in the defendant's plea, where he said under oath that nothing about his condition or the medications he was taking had any impact on his judgment or his ability to make decisions. As Your Honor noted, these letters are coherent. They're neatly written, and they reflect, as Judge Wood found, a motive to impact the pending live decision over whether the attempted murder guideline should apply. So ultimately, that was a factual question that Judge Wood made. She was uniquely situated to make that factual determination that notwithstanding his mental illness, he had the intent to obstruct justice. And as I said, the case law makes clear that where there are two views of the evidence, it's not this Court's role to second-guess the district judge. And so there was no clear error in that finding or any of Judge Wood's other findings. Counsel, before you sit down, let me just ask, what is the government's view of where the Court made a willfulness finding? And I know you talk about it in your brief. You don't have to say magic words. But what is it about this sort of one-page-typed obstruction ruling at Appendix 276 to 77 that constitutes a willfulness finding sufficient under our case law? Well, as Your Honor noted, she doesn't have to say the word willfully, and the Court hasn't found as much. But she said Belmar made these claims with the specific intent to obstruct justice. This is A. 277, as Your Honor identified, and then repeated. In addition, the Court finds that Belmar submitted these letters with the specific intent to obstruct justice. The Court finds that by falsely claiming that he did not engage in the shooting and by claiming that the evidence purporting to identify him as the shooter is false, Belmar sought to influence the Court's determination of his guideline range and sentence. And I think under the circumstances, that was more than enough. It was obvious why he was telling these lies. It's because there was a hugely impactful attempted murder guideline in dispute, and he was hoping that the Court would not apply it. Thank you.  Thanks. Attorney Kissel. Thank you, Your Honors. I do want to go. I think this case is actually distinguishable from the cases that the government raises, particularly Hendren, which they argue stands for the proposition that an obstruction enhancement applies to false written statements not made under oath. I will say that in Hendren, the defendant, what's distinguishable about this case from Hendren is that Hendren, the defendant wasn't denying guilt. He told the sentencing judge that he had been cooperating, right? That was the false information that he provided. So it doesn't implicate the application no. 2 limitation at all. You know, the fact that we're talking about whether something needs to be under oath or not, you know, denials of guilt need to be under oath. But then also denials of guilt that are just, well, denials of guilt are excluded from the obstruction calculus. Right? And that's not something that Hendren changes. And that's true whether or not they're under oath. That is true. Yes. So how does the under oath factor, and we have two letters here that are under oath, and they don't, I mean, the statements are as strong or as weak as in the other letter, depending on your view. How does the oath issue play into this at all? How does what? How does the oath issue matter to you? Well, I mean, what I argue in my papers is that it's not even, that 1746 is supposed to be construed strictly. It's not even a real oath. It doesn't even, you know, it's not signed. It's not dated the way an oath is, something sworn under the penalty of perjury is required to be dated. And he doesn't even use declaratory language. There's specific words that you're supposed to use, swear, affirm, so on. He doesn't state. He just says signed under, which is not one of the words that turns something into a sworn statement. So, you know, our argument is they're not even sworn statements. But I think here is that, you know, Mr. — despite what he might have said at his plea, you know, at my plea, I'm fine. I'm, you know, I'm on my medication. My medication is not affecting me. He clearly implicated his mental health issues. In two of the submissions he filed pro se, he attached as an exhibit the medication he was under. So he was asserting that his mental health was a live issue at the time he was writing his pro se papers. And that's really the relevant time here. We're not saying he wasn't in his — didn't have capacity to plead guilty. What we're saying here is are these statements, do they, are they excluded by Application Note 2? Is there possible that there's confusion or something else going on? He's asserting a reason why that might have been an issue. The clearest way to deal with this would have been appoint a lawyer to represent him and ask him what he meant, help him figure out, does he actually mean this? Does he want to retract these? And yet, without appointing a lawyer, we have a judge who's finding that he has the requisite intent, right? And that — there's a huge injustice that's happening here in how this process is happening from beginning to end. All right. I think we have your argument in hand, so I appreciate it. Thank you both. We'll take this case under advisement. Thank you. We'll argue on both sides.